**SAN BENITO BANK & TRUST CO. v. WAIT.**
**(No. 7864.)**

Court of Civil Appeals of Texas. San Antonio.
Nov. 30, 1927.

Rehearing Denied Dec. 23, 1927.

1. **Witnesses** ⊜⟹225—**Court properly exercised discretion in stopping examination of witness stating that he knew nothing more about matter.**

Where witness definitely stated that he knew nothing more than he had already testified about matter, court properly exercised discretion, in interest of orderly dispatch of business, by stopping further examination of witness as to such matter.

2. **Appeal and error** ⊜⟹1048(2)—**Stopping examination of witness, stating that he knew nothing more about matter, was harmless, where he elaborated subject to appellant's satisfaction on following day.**

Court's ruling stopping further examination of witness on ground that he had stated he knew nothing more about matter was rendered harmless, if erroneous, by permitting witness to resume subject and elaborate it to appellant's satisfaction during following day.

3. **Appeal and error** ⊜⟹1048(2)—**Stopping examination of witness, because of stating that he knew nothing more about matter, held not reversible error as giving impression that court deemed his testimony valueless.**

Trial judge's ruling, cutting off further examination of witness on ground that he had stated he knew nothing more about matter, held not reversible error as giving jury impression that court deemed his testimony without value, where three jurors, examined on subject at hearing of motion for new trial, testified that circumstance did not affect verdict.

4. **Appeal and error** ⊜⟹1069(1)—**Juror's statement during deliberations that witness had been "put out" of bank held not ground for reversal as warranting inference of misconduct discrediting his testimony.**

Juror's statement, during deliberations, that one testifying for defendant bank had been "put out" of bank, held not ground for reversal as warranting inference that he was put out for misconduct, thereby discrediting his testimony, where two other jurors, examined at hearing of motion for new trial, testified that they did not hear statement, and such witness himself testified on trial that he was no longer with bank on reorganization thereof.

5. **Appeal and error** ⊜⟹1057(2)—**Exclusion of mortgage, offered to show its existence, which was recited in instrument sued on and admitted by appellee, held harmless.**

Exclusion from evidence of mortgage, offered to prove that appellant held it, which fact was recited in instrument sued on and admitted by appellee as shown by bill of exceptions and appellant's brief, held not harmful, though perhaps admissible as against objection, on which rejected, that it did not sufficiently describe automobile covered.

6. **Appeal and error** ⊜⟹1048(4)—**Permitting witness to testify from memorandum held harmless, in absence of showing that he testified therefrom as to other facts than immaterial date and date of note in evidence.**

Permitting witness to refer to, and testify from, paper containing notations as to dates, put down over two years before testifying and over four years after transaction testified to, *held* harmless, in absence of showing in record or appellant's brief that witness used memorandum as basis for testimony as to other facts than immaterial date and date of note in evidence as shown in statement of facts.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by Ray S. Wait against the San Benito Bank & Trust Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Graham & Graham, of Brownsville, for appellant.

H. B. Galbraith, of Brownsville, for appellee.

SMITH, J. This suit involves the settlement of a money transaction between appellant bank and trust company and appellee, Wait, who were, respectively, defendant and plaintiff in the court below. A statement of the details of the controversy is not deemed necessary to this decision.

[1-3] It appears that during the trial the witness Lasby was testifying on direct examination for the bank concerning conversations he had had with appellee, Wait, particularly statements made to the witness by Wait that he had made a settlement with the bank; that "Mr. Wait told me he had made a settlement and it was some $2,000 or more—I didn't pay much attention to the exact amount—something over $2,000. I do not know what the $2,000 meant, and I never did know." Counsel for the bank then asked, "Had he got a discount?" At this juncture, upon objection from Wait's counsel, the trial judge stopped further examination of the witness as to the meaning of Wait's statements concerning the $2,000 item, upon the ground that the witness had already stated that he did not know anything more about it other than what he had stated. Counsel for the bank then asked that the court reporter read to the jury the previous testimony of the witness, but the court refused to permit this, and directed the examination to proceed, to which counsel for the bank protested and took his bill. Appellant contends that this action of the court was prejudicial error, requiring a reversal of the judgment. We overrule this contention. The witness had definitely stated that he knew nothing further than he had already testified about the matter, and it was the

duty of the court, in the interest of the orderly dispatch of business, to put a stop to an apparently fruitless examination. It was a proper exercise of a discretion placed in the trial judge, and the incident did not amount to material abuse of that discretion. Moreover, during the following day, while the same witness was under further examination by appellant, he was permitted to resume the subject which the court had cut off on the previous day, and elaborated it to the satisfaction of appellant. If the previous ruling had been erroneous, it was rendered harmless by the subsequent proceeding. Appellant contends that in cutting off the examination the trial judge gave the jury the impression that the court deemed the testimony of the witness to be without value in the case; but this contention is without merit. Three jurors were examined upon the subject at the hearing of the motion for new trial. One of them testified that "it looked like" the judge did not want to hear appellant's "side" of the question at all; but he further testified that the circumstance did not influence him in reaching a verdict, which destroyed any merit appellant's complaint may have otherwise had. The second juror testified that the testimony of the witness in question "didn't have much effect upon my mind so far as reaching a verdict was concerned"; but this attitude of the juror does not appear to have been attributed or attributable to the incident complained of. The third juror testified that if he noticed the incident it made no impression upon him and did not affect his verdict. Clearly, then, the transaction does not warrant reversal. ·

[4] Under its second proposition appellant complains of the fact that during their deliberations upon the verdict one of the jurors stated that a Mr. Richey, a former employee of the bank, who had testified in its behalf upon the trial, had at one time been "put out of the bank," and another juror answered, "Yes; I live in San Benito." It is contended by appellant that these remarks of the jurors warranted an inference that Richey had been "put out" of the bank for misconduct, and that this inference had the effect of discrediting Richey's testimony with the jury. Three jurors testified in the hearing of the motion for new trial, one of them being the juror who had made the statement that Richey had been "let out" of the bank. The other two testified that they did not hear this statement, if it was made, nor any statement or discussion concerning the circumstances of Richey's leaving the employment of the bank. Besides, Richey himself testified upon the trial that as to whether the situation growing out of the panic in 1920 "wasn't so acute that the bank reorganized, and in the reorganization I was no longer with the bank—you can call it anything you want to." The effect of this statement was practically the same as the statement of the juror that Richey was "let out" of the bank. We do not think that the incident complained of warrants a reversal, and appellant's second proposition is overruled.

[5] In the course of the trial appellant offered in evidence a mortgage given by one Hurst to appellant upon "one six-passenger Stutz automobile"; which evidence was excluded by the court upon the objection of appellee that the mortgage did not sufficiently describe the automobile so as to identify it with the automobile directly involved in the suit, which was described in other papers in the suit as a "Stutz six-passenger automobile, Series H, No. 6886." Appellant complains of the exclusion of this evidence, contending that the objection resulting in its rejection "went solely to the weight of the evidence, and not to its admissibility." In the bill of exception showing this transaction no pleadings or testimony is set out so as to show the materiality of the proffered evidence, nor its relation to the case finally made, nor are any references to the record given by which this court may determine these matters for itself. It is stated generally in appellant's brief that an issue in the case was whether the bank did have such mortgage; that "upon the trial of the case the appellee contended that the bank did not have a mortgage upon the Stutz car in question, but in order to accommodate the said bank he allowed it to take a mortgage upon the car and execute the agreement to him upon which appellee sued"; that it is "admitted by the appellee that the automobile was disposed of by the said appellant bank, presumably under its mortgage"; that "the instrument would have served to impeach the testimony of the appellee, and to bear out the recitation made in the instrument sued on, and the contention of appellant and said offered evidence bore upon a material issue in the case." The "instrument sued on," which was in evidence, recited that the bank held Hurst's mortgage upon the automobile in controversy. We assume from the foregoing that the purpose of introducing the mortgage in evidence was to prove the fact that the bank held such mortgage, and that this fact was otherwise fully shown. It was recited in the instrument sued on, which was signed by the bank and in evidence; it was "admitted by appellee that the automobile was disposed of by the bank, presumably under its mortgage," and that appellee "allowed" the bank "to take a mortgage upon the car" as a matter of accommodation. The question of the existence of the mortgage was not an ultimate, but only an incidental, issue in the case, which did not rest upon that, but another, instrument, which was signed by the

bank, was in evidence, unquestioned, and recited the very fact of the existence of the mortgage. The fact of the existence of the mortgage appears from the bill of exception, and from appellant's brief, to have been "admitted by appellee," and to have been otherwise shown. The mortgage was perhaps·admissible as against the objection upon. which it was rejected, but for the reasons stated, its exclusion does not appear to have been harmful. We base this conclusion upon the facts recited in appellant's brief, and upon the failure ·of appellant to set 'out in its brief any specific pleading or testimony, or record reference to· any particular pleading or evidence, requiring a different conclusion. Appellant's third proposition is accordingly overruled.

[6] In the course of his direct examination appellee took a paper from his pocket and began referring to it in answering questions propounded by his counsel, whereupon counsel for appellant sought to test the nature of the memorandum, eliciting from the witness that the paper "is some notations as to dates that I jotted down from time to time, and I wrote those up a couple of years ago. I furnished it to you (his counsel). This that I have in my hand was written several years ago, and I wrote it from data which I had made notations of from time to time as these various phases of the proposition developed, and from that various data I compiled this in one. sheet at the time I filed this suit; it was made from original memoranda, note books, etc., I kept at the time the different transactions occurred; it is mostly dates, facts, and figures."

It appears from the bill of exceptions that appellant "objected to witness testifying from or attempting to refresh his memory by said paper, on the ground that the notations on said paper were put down over two years ago, and were not put down at a time the transaction was purported to have taken place, the first transaction the witness was asked about having taken place in 1920, and the figures having been put down on this paper in June, 1925, the date of the filing of this suit, more than four years after the transaction took place; further objection to the use of said paper being made on the ground that it was hearsay evidence and secondary evidence." The court overruled the objections and "permitted the witness to refer to said paper and to testify therefrom during his entire examination," and complaint is made thereof in appellant's fourth proposition. Appellant points out no specific instance in which the' witness used or referred to this memorandum, nor to any particular fact testified to by the witness from the paper. In the statement of facts it appears affirmatively that the witness consult-

ed this paper twice during his testimony, once as to an immaterial date, and once to give the exact date of a note, which was itself in evidence and spoke the fact gleaned by the witness from the objectionable memorandum. If the witness used the memorandum as a basis for his testimony of other facts, neither the record nor appellant's brief discloses it, and therefore no injury is made to appear to have resulted to appellant from the use of the paper. We conclude that in this state of the case appellant's fourth and last proposition, complaining of this transaction, must be overruled.

The judgment is affirmed.